IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| SHIRLEY A. TOLBERT, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No._____ |
| ) | |
| JEFFERSON COUNTY COMMISSION, ) | **JURY TRIAL DEMANDED** |
| ) | |
| Defendant. ) | |
| ) | |

## COMPLAINT

**COMES NOW** the Plaintiff, Shirley A. Tolbert, and, for her Complaint against Defendant, Jefferson County Commission, states as follows:

### STATEMENT OF THE CASE

1.   This is a lawsuit brought by Plaintiff, Shirley A. Tolbert, who has been affected by the claims alleged below, seeking permanent relief from unlawful discriminatory practices involving retention, promotion, compensation, and other terms and conditions of employment in failing to remedy systemic employment discrimination based on age. The practices committed by the defendant violate the Age Discrimination in Employment Act of 1967 ("**ADEA**"), as amended, 29 U.S.C. § 621 *et seq.*

### JURISDICTION AND VENUE

2.   This Court has subject matter jurisdiction over this cause of action pursuant to 28 U.S.C. §§ 1331 and 1343, and 29 U.S.C. § 626.

3. The defendant is located and/or doing business within this judicial district and division, and this action is brought in the judicial district wherein the unlawful employment practices that form the basis of this Complaint were committed, making venue proper under 28 U.S.C. § 1391.

4. Plaintiff has fulfilled all conditions precedent to the institution of this action pursuant to 29 U.S.C. § 621 *et seq.* Plaintiff filed a charge of discrimination with the Equal Employment Opportunity Commission ("**EEOC**"), Charge Number 130-2005-486, on November 5, 2004. [Attached hereto as Exhibit "A."] Plaintiff timely files this action within ninety days of receipt of her Notice of Right to Sue from the **EEOC**, which was mailed to Plaintiff on January 31, 2005. [Attached hereto as Exhibit "B."]

## PARTIES

5. Plaintiff, Shirley A. Tolbert, is an adult female resident of the state of Alabama and this judicial district. At all times material herein, she was employed by Defendant, Jefferson County Commission.

6. Defendant, Jefferson County Commission ("the Commission"), is a governmental entity located in the state of Alabama and this judicial district. At all times material herein, it was the employer of Plaintiff and is an "employer" within the meaning of the **ADEA**.

## STATEMENT OF FACTS

7. Plaintiff, Shirley A. Tolbert ("Tolbert"), is a 58 year-old African-American female. She began working for the Jefferson County Commission on May 6, 2002.

8. Before holding that job, she was employed by U.S. Steel for two years. Both of these jobs came after her retirement from twenty-eight years of employment with the State of Alabama. Her job title with Defendant was Budget Analyst.

9. On October 18, 2004, Tolbert was wrongfully given a five-day suspension and reprimanded in a hearing before Commission President Larry P. Langford.

10. On May 19, 2004, Ms. Tracie Hodge, Tolbert's supervisor, came to her cubicle and asked about the strength of Tolbert's reading glasses. Tolbert gave her the pair that she kept in her desk.

11. Ms. Hodge began to explain how reading glasses make you look old and how she never wants to wear reading glasses because they are a sign of aging. Ms. Hodge went on to say that she would not wear them because wearing them down on your nose (as Tolbert did) makes you look old. She left Tolbert's cubicle and then returned, still talking about the reading glasses and aging. Tolbert let her have the last word and backed out of the conversation.

12. In early August of 2004, Ms. Hodge made a statement that old people cannot hula hoop. She asked Tolbert if she could hula hoop. Remembering that she had hula hooped as a child, Tolbert said she could. The following day, Ms. Hodge brought a hula hoop to work in order to prove her point. To keep the peace, Tolbert twirled the hula hoop around on her wrist.

13. On August 12, 2004, Ms. Hodge called Tolbert into her office along with two other employees, Mike Cochran and Lena Wormly. After a brief conversation about a report Mr. Cochran had turned in, she asked the other two employees to leave.

14. Once she and Tolbert were alone, she told Tolbert that she needed to start to look for another job. She then said that there are plenty of jobs available "for people your age," and that she does not understand why people retire (like Tolbert did) but then come out of retirement to continue working.

15. Ms. Hodge then mentioned Paulette Kelley as an example. Ms. Kelly is roughly Tolbert's age and was also, like Tolbert, a classified employee who works for Jefferson County. Ms. Hodge said that Ms. Kelly wanted to get out of the Budget Office so badly that she took a pay cut from Grade 21 to Grade 16.

16. Later that day, Tolbert overheard a conversation between Ms. Hodge, Ms. Karen Whitt, and Ms. Marily Shepard. Their conversation was about people who are old, retired, and get new jobs. Ms. Hodge said, "They are crazy." The others agreed. Ms. Hodge then said, "When I retire, I am not going to work." Another similar conversation took place right outside Tolbert's cubicle.

17. On September 7, 2004, Carolyn Stroud came to Tolbert's cubicle and told her that Ms. Whitt had said to her (Stroud) that she (Whitt) did not think that retired people should work. Ms. Stroud had recently retired and came back to do contract work. Ms. Whitt ended Ms. Stroud's contract and replaced her with a younger person.

18. During the recent process of moving the Budget Office, Tolbert overheard Ms. Hodge say to another employee, "Don't let those old crazy women make you sick." The employee had recently returned to work from a health crisis.

4

19. Around October 15, 2004, Pam LNU (Last Name Unknown) was trying to get rid of a chair in Tolbert's cubicle before they moved the office. Ms. Whitt and her staff were moving into the previous work space. Pam asked Ms. Whitt if she would take the chair, to which Ms. Whitt responded, "I don't want anything old and ugly." Tolbert took that as a reference to her because it was her chair and there was nothing wrong with it.

20. On August 16, 2004, Tolbert received a notice of contemplated disciplinary action from Ms. Hodge. The violation read that Tolbert refused to process a travel request on or about August 11, 2004. The incident involved Tolbert asking for instructions in writing from Ms. Hodge regarding the particular Budget approval form. The Cash Advance/Travel Request/Authorization form that Tolbert received to process contained three errors. The errors involved the account code, the signatures, and the available funds, which errors needed correction before processing.

21. On August 4, 2004, the Cash Advance/Travel Request/Authorization form for Mr. Roger D. Lee was processed in accordance with county policy in the amount of $704.06. The form was correct as processed. Mr. Lee also requested a cash advance check payable to himself for Mr. Bobbie Loggins in the amount of an additional $704.06. Nothing was provided to support the cash advance to Mr. Lee for Mr. Loggins. No signatures were provided by Mr. Loggins. In addition, the balance in the account after processing Mr. Lee's check would be only $360, thus not enough to cover the check.

22. Because of the errors in the initial request, the problem of insufficient funds, and the lack of a signature from Mr. Loggins, Tolbert recommended to Mr. Loggins and Mr. Cecil Calvert, Supervisor of Highway Maintenance-Ketona, that Mr. Loggins submit a request for his cash advance. The conference that he was planning to attend would not begin until September 7, 2004. This left plenty of time to get the cash advance approved and the funds transferred into the Highway Maintenance-Ketona travel account.

23. On August 12, 2004, Ms. Hodge asked Tolbert to prepare the Cash Advance/Travel Request/Authorization form for Mr. Lee and Mr. Loggins using an incorrect code. The incorrect account code was 13-5400-53501. The two employees did not work in department 5400. The new account code was selected because there were funds available in that account. These funds, however, were in another department's budget. The usual procedure had been to transfer the funds by processing a budget amendment. A cash advance had already been submitted by Tolbert and approved on the Commission agenda for Mr. Lee.

24. Ms. Hodge stated that it was the county's policy to pay the cash advances of one employee to another without the employee's approval or signature. Of all of the departments that were assigned to Tolbert, Roads and Transportation was the only department that followed this policy. Tolbert had not experienced this practice with other departments.

25. Because Tolbert perceived that the supervisor was asking her to do something that might give the appearance of unethical behavior, Tolbert asked Ms. Hodge to provide the instructions regarding the policy in writing. She said that she would not. Instead, she chose to claim that Tolbert was insubordinate. That accusation is false. The forms were processed correctly and in accordance with documented county policy on August 4, 2004.

26. Further accusations were made between the time of Tolbert's response to the original accusations and her first hearing before Commission President Larry Langford.

27. During the hearing, which took place on October 18, 2004, Commissioner Langford was not interested in anything Tolbert said in support of her case. When Tolbert began producing documents to prove that the budget amendments and travel documents were processed correctly and timely, the attorney for the Defendant stopped the hearing, and they all left the room.

28. When Tolbert attempted to present her side of the story, Ms. Hodge frequently interrupted until the attorney asked her to let her speak. When asked if Tolbert had anything she wanted to tell the Commission, Tolbert began with, "I have done everything that Tracie asked me to do." Commission President Langford abruptly stopped the hearing and said, "That is it! You rolled your eyes at her!" He then asked Ms. Hodge what she recommended. She said, "Five days suspension." Commissioner President Langford then turned to Tolbert and said, "If you come back again, you're terminated."

29. The attorney kept reminding Ms. Hodge that a five-day suspension could not be appealed. That was meant as a reminder to limit the suspension to that length of time for her benefit.

30. Not surprisingly, a similar episode took place with Ms. Hodge again, on January 27, 2005. Ms. Hodge accused Tolbert of insubordination over her failure to process several travel request forms that were, per county requirements, not complete and properly documented. Tolbert was notified of a contemplated disciplinary action, and, on February 9, 2005, a second hearing was held before Commission President Langford.

31.     The second hearing was a reprise of the first, with Langford cutting off Tolbert and, frankly, abusing her verbally. The hearing ended in her termination, effective that day.

## COUNT ONE

## AGE DISCRIMINATION

32.     Plaintiff adopts and re-alleges each and every allegation contained in this Complaint as if set out anew herein.

33.     Tolbert was in a protected class and came within coverage of the **ADEA** and, in express violation thereof, her employer, the Commission, wrongfully harassed her because of her age, took adverse employment actions against her including suspension and termination, which were done willfully in violation of the **ADEA**.

34.     As a result of such adverse employment action, Tolbert was caused to be injured and damaged; to have her career significantly and adversely impacted; and to forego compensation and benefits.

**WHEREFORE, PREMISES CONSIDERED**, Plaintiff demands the following relief:

- a.     Reinstatement in the position(s) in which she would have worked absent the Defendant's discriminatory treatment;
- b.     Injunctive relief;
- c.     Pre-judgment interest;
- d.     Attorneys' fees;
- e.     Costs;
- f.     Liquidated damages to deter such conduct in the future;

g. Compensatory damages for loss of wages, loss of benefits, and loss of compensation; and

j. Such other legal or equitable relief as may be appropriate to effectuate the purposes of the **ADEA** or to which she may be entitled.

**Respectfully submitted,**

*/s/ John D. Saxon*
John D. Saxon
Federal Bar No. 420643258
Stephen J. Austin
Federal Bar No. 424984527
**Attorneys for Plaintiff**

OF COUNSEL:

JOHN D. SAXON, P.C.
2119 3rd Avenue North
Birmingham, Alabama 35203
Telephone:   (205) 324-0223
Facsimile:     (205) 323-1583

**PLAINTIFF DEMANDS TRIAL BY STRUCK JURY ON ALL CLAIMS SO TRIABLE**

*/s/*
OF COUNSEL

9

**PLAINTIFF'S ADDRESS:**

Shirley A. Tolbert
1703 Huntington Drive
Birmingham, AL 356214

**PLEASE SERVE DEFENDANT BY
CERTIFIED MAIL RETURN RECEIPT REQUESTED**

**JEFFERSON COUNTY COMMISSION**
c/o Hon. Larry Langford, President
Jefferson County Courthouse
716 North Richard Arrington Jr. Blvd.
Birmingham, AL 35203

| | |
|---|---|
| This form is affected by the Privacy Act of 1974. See Privacy Act Statement before completing this form. | ☐ FEPA<br>☒ EEOC |

Charge Number: 130-2005-00486

_____ and EEOC
State or local Agency, if any

**Name** (Indicate Mr., Ms., Mrs.)
Ms. Shirley A. Tolbert

**Home Telephone** (Include Area Code)
[redacted]

**Street Address** — **City, State and Zip Code**
[redacted], Birmingham, AL [redacted]

**Date of Birth**
[redacted]

**NAMED IS THE EMPLOYER, LABOR ORGANIZATION, EMPLOYMENT AGENCY APPRENTICESHIP COMMITTEE, STATE OR LOCAL GOVERNMENT AGENCY WHO DISCRIMINATED AGAINST ME** (If more than one list below)

| Name | Number of Employees, Members | Telephone (Include Area Code) |
|---|---|---|
| Jefferson County Commission | 15+ | 205-325-5764 |

**Street Address** — **City, State and Zip Code**
Courthouse, 716 N. Richard Arrington, Jr. Blvd., Birmingham, AL 35203

**County:** Jefferson

**Cause of Discrimination Based on** (Check appropriate box(es))

☐ RACE  ☐ COLOR  ☐ SEX  ☐ RELIGION  ☒ AGE
☐ RETALIATION  ☐ NATIONAL ORIGIN  ☐ DISABILITY  ☐ OTHER (Specify)

**Date Discrimination Took Place**
Earliest — Latest: 10-18-04
☒ CONTINUING ACTION

**THE PARTICULARS ARE** (If additional space is needed, attach extra sheet(s)).

See attached.

RECEIVED

I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or telephone number and I will cooperate fully with them in the processing of my charge in accordance with their proceedures.

I declare under penalty of perjury that the foregoing is true and correct.

November 5, 2004    *Shirley A. Tolbert*
Date                 Charging Party (Signature)

**NOTARY** - (When necessary for State and Local Requirements)

I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief.

SIGNATURE OF COMPLAINANT

SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE
(Day, month, and year)

**EXHIBIT A**

**MS. SHIRLEY A. TOLBERT**
**DOB:** ▓▓▓▓
**SOCIAL SECURITY NO.:** ▓▓▓▓▓▓▓

I am a 58 year old African-American female. I began working for the Jefferson County Commission Office on May 6, 2002. Before holding that job, I was employed by U.S. Steel for two years. Both of these jobs came after my retirement after twenty-eight years of being employed by the State of Alabama. My job title is Budget Analyst. On October 18, 2004 I was wrongfully given a five-day suspension and reprimanded in a hearing before County Commissioner Larry P. Langford.

On May 19, 2004, Ms. Tracie Hodge, my supervisor, came to my cubicle and asked about the strength of my reading glasses. I gave her the pair that I keep in my desk. She began to explain how reading glasses make you look old and how she never wants to wear reading glasses because they are a sign of aging. She went on to say that she would not wear them because wearing them down on your nose (as I do) makes you look old. She left my cubicle and then returned, still talking about the reading glasses and aging. I let her have the last word and backed out of the conversation.

In early August of 2004, Ms. Hodge made a statement that old people cannot hula hoop. She asked me if I could hula hoop. Remembering that I had hula hooped as a child, I said I could. The following day, Ms. Hodge brought a hula hoop to work in order to prove her point. To keep the peace, I twirled the hula hoop around on my wrist.

On August 12, 2004 Ms. Hodge called me into her office along with two other employees, Mike Cochran and Lena Wormly. After a brief conversation about a report Mr. Cochran had turned in, she asked the other two employees to leave. Once we were alone, she told me that I needed to start to look for another job. She then said that there are plenty of jobs available "for people your age," and that she does not understand why people retire (like I did) but continue working. She then mentioned Paulette Kelley as an example. Ms. Kelly is roughly my age and is also a classified employee who works for the county. She said that Ms. Kelly wanted to get out of the Budget Office so badly that she took a pay cut from Grade 21 to Grade 16.

Later that day, I overheard a conversation between Ms. Hodge, Ms. Karen Whitt, and Ms. Marily Shepard. Their conversation was about people who are old, retired, and get new jobs. Ms. Hodge said, "They are crazy." The others agreed. Ms. Hodge then said, "When I retire, I am not going to work." Another similar conversation took place right outside my cubicle.

On September 7, 2004 Carolyn Stroud came to my cubicle and told me that Ms. Whitt had said to her that she did not think that retired people should work. Ms. Stroud had recently retired and came back to do contract work. Ms. Whitt ended Ms. Stroud's contract and replaced her with a younger person.

MS. SHIRLEY A. TOLBERT
DOB: ■
SOCIAL SECURITY NO.: ■
PAGE TWO

During the recent process of moving the Budget Office, I overheard Ms. Hodge say to another employee, "Don't let those old crazy women make you sick." The employee had recently returned to work from a health crisis.

Around October 15, 2004 Pam LNU (Last Name Unknown) was trying to get rid of a chair in my cubicle before we moved the office. Ms. Whitt and her staff were moving into our previous work space. Pam said that she asked Ms. Whitt if she would take the chair, to which Ms. Whitt responded, "I don't want anything old and ugly." I took that as a reference to me because it was my chair and there was nothing wrong with it.

On August 16, 2004 I received a notice of contemplated disciplinary action from Ms. Hodge. The violation said that I refused to process a travel request on or about August 11, 2004. The incident involved me asking for instructions in writing from Ms. Hodge regarding the particular Budget approval form. The Cash Advance/Travel Request/Authorization form which I received to process had three errors. The errors involved the account code, the signatures, and the available funds, which errors needed correction before processing.

On August 4, 2004, the Cash Advance/Travel Request/Authorization form for Mr. Roger D. Lee was processed in accordance with county policy in the amount of $704.06. The form was correct as processed. Mr. Lee also requested a cash advance check paid to himself for Mr. Bobbie Loggins in the amount of an additional $704.06. Nothing was provided to support the cash advance to Mr. Lee for Mr. Loggins. No signatures were provided by Mr. Loggins. In addition, the balance in the account after processing Mr. Lee's check would be only $360, not enough to cover the check.

Because of the errors in the initial request, insufficient funds, and the lack of a signature from Mr. Loggins, I recommended to Mr. Loggins and Mr. Cecil Calvert, Supervisor of Highway Maintenance-Ketona, that Mr. Loggins submit a request for his cash advance. The conference that he was planning to attend would not begin until September 7, 2004. This left plenty of time to get the cash advance approved and the funds transferred into the Highway Maintenance-Ketona travel account.

On August 12, 2004 Ms. Hodge asked me to prepare the Cash Advance/Travel Request/Authorization form for Mr. Lee and Mr. Loggins using an incorrect code. The incorrect account code is 13-5400-53501. The two employees did not work in department 5400. The new account code was selected because there were funds available in that account. These funds, however, were in another department's budget. The usual procedure has been to transfer the funds by processing a budget amendment. A cash advance had already been submitted by me and approved on the Commission agenda for Mr. Lee.

MS. SHIRLEY A. TOLBERT
DOB: ▮▮▮
SOCIAL SECURITY NO.: ▮▮▮
PAGE THREE

    Ms. Hodge stated that it is the county's policy to pay the cash advances of one employee to another without the employee's approval or signature. Of all of the departments that are assigned to me, Roads and Transportation is the only department that follows this policy. I have not experienced this practice with other departments.

    Because I perceived that the supervisor was asking me to do something that might give the appearance of unethical behavior, I asked her to provide the instructions regarding the policy in writing. She said she would not. Instead she chose to claim that I was insubordinate. This accusation is false. The forms were processed correctly and in accordance with documented county policy on August 4, 2004.

    Further accusations were made between the time of my response to the original accusations and my hearing before Commissioner Larry Langford.

    During the hearing, which took place on October 18, 2004, Commissioner Langford was not interested in anything I said in support of my case. When I began producing documents to prove that the budget amendments and travel documents were processed correctly and timely, the attorney stopped the hearing and they all left the room. When I attempted to present my side of the story, Ms. Hodge frequently interrupted until the attorney asked her to let me speak. When asked if I had anything I wanted to tell the Commission, I began with, "I have done everything that Tracie asked me to do." Commissioner Langford stopped the hearing and said, "That is it! You rolled your eyes at her!" He then asked Ms. Hodge what she recommended. She said, "Five days suspension." Commissioner Langford then turned to me and said, "If you come back again, you're terminated."

    The attorney kept reminding Ms. Hodge that a five-day suspension could not be appealed. This was meant as a reminder to limit the suspension to that length of time for her benefit.

    I believe that the suspension was based on pretext and is simply one more effort by Ms. Hodge to get rid of me because of my age. Based on the foregoing, I believe that I have been discriminated against based on my age in violation of the Age Discrimination in Employment Act of 1967.

## DISMISSAL AND NOTICE OF RIGHTS

To: Shirley A. Tolbert
~~[redacted]~~
Birmingham, Alabama ~~[redacted]~~

From: Birmingham District Office
Ridge Park Place
1130 22nd Street South
Suite 2000
Birmingham, AL 35205

[ ]   On behalf of person(s) aggrieved whose identity is CONFIDENTIAL (29 CFR § 1601.7(a))

| Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| 130-2005-00486 | Kevan J. Jackson, Investigator | (205) 212-2128 |

**THE EEOC IS CLOSING ITS FILE ON THIS CHARGE FOR THE FOLLOWING REASON:**

[ ]   The facts alleged in the charge fail to state a claim under any of the statutes enforced by the EEOC.

[ ]   Your allegations did not involve a disability that is covered by the Americans with Disabilities Act.

[ ]   The Respondent employs less than the required number of employees or is not otherwise covered by the statues.

[ ]   We cannot investigate your charge because it was not filed within the time limit required by law.

[ ]   Having been given 30 days in which to respond, you failed to provide information, failed to appear or be available for interviews/conferences, or otherwise failed to cooperate to the extent that it was not possible to resolve your charge.

[ ]   While reasonable efforts were made to locate you, we were not able to do so.

[ ]   You had 30 days to accept a reasonable settlement offer that afford full relief for the harm you alleged.

[X]   The EEOC issues the following determination: Based upon its investigation, the EEOC is unable to conclude that the information obtained establishes violations of the statutes. This does not certify that the respondent is in compliance with the statutes. No finding is made as to any other issues that might be construed as having been raised by this charge.

[ ]   The EEOC has adopted the findings of the state or local fair employment practices agency that investigated this charge.

[ ]   Other (briefly state) _____

### - NOTICE OF SUIT RIGHTS -

*(See the additional information attached to this form.)*

**Title VII, the Americans with Disabilities Act, and/or the Age Discrimination in Employment Act:** This will be the only notice of dismissal and of your right to sue that we will send you. You may file a lawsuit against the respondent(s) under federal law based on this charge in federal or state court. Your lawsuit must be filed **WITHIN 90 DAYS** from your receipt of this Notice; otherwise, your right to sue based on this charge will be lost. (The time limit for filing suit based on a state claim may be different.)

**Equal Pay Act (EPA):** EPA suits must be filed in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that **backpay due for any violations that occurred more than 2 years (3 years)** before you file suit may not be collectible.

On behalf of the Commission

_____     January 3/05
Bernice Williams-Kimbrough, District Director    *(Date Mailed)*

Enclosure(s)

cc:   John D. Saxon      Jeffrey M. Sewell
     Law Office Of      Assistant County Attorney
     John D. Saxon, P.C.      Jefferson County Commission
     A Professional Corporation      Office of County Attorney
     2119 3rd Avenue North      280 Courthouse
     Birmingham, Alabama 35203      Birmingham, Alabama 35203

**EXHIBIT B**